

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CRIMINAL ACTION NO. 3:06CR-107-H |
| JOSEPH TURNER | DEFENDANT |

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c)(1) (A) and (C), the United States of America, by David L. Huber, United States Attorney for the Western District of Kentucky, and defendant, Joseph Turner, and his attorney, Patrick J. Renn, have agreed upon the following:

1. Defendant acknowledges that he has been charged in the Indictment in this case with violations of 18 U.S.C. §§ 2422(b), 2251(a), and 2251(e).

2. Defendant has read the charges against him contained in the Indictment, and those charges have been fully explained to him by his attorney. Defendant fully understands the nature and elements of the crimes with which he has been charged.

3. Defendant will enter a voluntary plea of guilty to Count 2 of the Indictment in this case, a violation of 18 U.S.C. § 2422(b). Defendant will plead guilty because he is in fact guilty of the charge. The parties agree to the following factual basis for this plea:

> On or about June 21, 2006, **Turner** used a screen name "movie_joe930," and began on-line communications with an individual representing herself to be a 14-year-old girl. The individual had created a profile on "fotochatter.com," including approximately seven digital photographs and personal information such as age. The individual listed her screen name as "bamabuggin." Fotochatter's main page indicates that the web site makes cameraphones more fun. It allows users to communicate with one another by posting messages and photos from a cellular telephone.

**Turner**, using the screen name "Movie_joe930," continued the on-line communications with "bamabuggin" up to and including July 7 2006. During the communications, he revealed his last name as **Turner** and indicated that he lived in Frankfort, Kentucky. He also described the type of car he drove, including sending a digital picture of the vehicle. **Turner** stated that he lived in an apartment with a roommate and revealed his age as 32. During this time period, **Turner** sent digital photographs of himself to "bamabuggin," including pictures of his face and naked, erect penis. He asked for additional photographs from "bamabuggin." She responded by sending a photograph - fully clothed.

During the on-line communications, **Turner** made plans with "bamabuggin" to have an in-person meeting. "Bamabuggin" had previously told **Turner** that she was visiting her father in the southern Indiana area. The two agreed to meet in Louisville, Kentucky, on July 7, 2006, at approximately 12:15-12:25 p.m. at Oxmoor Mall. The two were going to eat pizza and then go to an undisclosed location to have sex.

During the on-line communications, **Turner** discussed engaging in sexual activity with the person he believed to be a 14-year-old female, including intercourse with her. **Turner** specifically requested that the two engage in sexual relations "doggie style." During the communications, **Turner** offered to provide a digital camera to "bamabuggin." When "bamabuggin" asked the type of camera, **Turner** responded that it was an Apex camera. He asked her if they could take photographs while engaging in sexually explicit conduct. **Turner** also asked her to keep the camera for the purpose of taking "sexy" pictures of herself – including naked pictures – to send to him after their meeting. **Turner** also discussed bringing "bamabuggin" thong underwear as a gift when they met. Prior to July 7, 2006, he sent digital images of the pink thong underwear to "bamabuggin."

On July 7, 2006, law enforcement officials waited at Oxmoor Mall at the previously agreed upon place (California Pizza Kitchen), and time. They observed **Turner** park his car in the parking lot and walk directly to the California Pizza Kitchen. A law enforcement official approached **Turner** and identified himself as an FBI Agent. The agent placed **Turner** under arrest, advised him of his constitutional rights, and asked whether he was willing to be interviewed. **Turner** provided some information to the law enforcement officials and gave a written consent to search his car. A search of the vehicle revealed a black nylon bag containing, among other things, a pair of pink thong underwear (the ones previously photographed and sent to "bamabuggin"), a Wal-Mart receipt for the thong underwear, an Apex digital camera with memory card, a teenage magazine, and four loose condoms.

At all times relevant to the conduct described above, **Turner** used a cellular telephone connected to the Internet to communicate with "bamabuggin." He transmitted the messages from Jefferson County, Kentucky, which is in the Western District of Kentucky. Also, on July 7, 2006, **Turner** attempted to meet "bamabuggin," a person he believed to be a 14-year-old girl at a location in Jefferson County, Kentucky.

4. Defendant understands that the charge to which he will plead guilty carries a minimum term of imprisonment of 5 years and a maximum term of imprisonment of 30 years, a maximum fine of $250,000.00, and supervised release of at least 5 years and up to any number of years, including life, which the Court may specify. Defendant understands that an additional term of imprisonment may be ordered if the terms of the supervised release are violated, as explained in 18 U.S.C. § 3583.

5. Defendant understands that if a term of imprisonment of more than one year is imposed, the Sentencing Guidelines require a term of supervised release and that he will then be subject to certain conditions of release. §§5D1.1, 5D1.2, 5D1.3.

6. Defendant understands that by pleading guilty, he surrenders certain rights set forth below. Defendant's attorney has explained those rights to him and the consequences of his waiver of those rights, including the following:

   A. If defendant persists in a plea of not guilty to the charges against him, he has the right to a public and speedy trial. The trial could either be a jury trial or a trial by the judge sitting without a jury. If there is a jury trial, the jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent and that it could not convict him unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt.

   B. At a trial, whether by a jury or a judge, the United States would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear

3

voluntarily, he could require their attendance through the subpoena power of the Court.

    C.    At a trial, defendant would have a privilege against self-incrimination and he could decline to testify, without any inference of guilt being drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

7. Defendant understands that the United States Attorney's Office has an obligation to fully apprise the District Court and the United States Probation Office of all facts pertinent to the sentencing process, and to respond to all legal or factual inquiries that might arise either before, during, or after sentencing. Defendant admits all acts and essential elements of the indictment counts to which he pleads guilty.

8. The defendant understands that he may be responsible for a fine, costs of prosecution, costs of incarceration and supervision which may be required. All financial matters are left to be addressed at sentencing.

9. Defendant acknowledges liability for the special assessment mandated by 18 U.S.C. § 3013 and will pay the assessment in the amount of $100.00 to the United States District Court Clerk's Office **on or before** the date of sentencing.

10. At the time of sentencing, the United States will

    -move for dismissal of Count 1 of the Indictment.

    -agree that a fine at the lowest end of the applicable Guideline Range is appropriate, and is to be due and payable on the date of sentencing.

11. The parties stipulate and agree that a sentence of imprisonment of 10 years followed by a term of Supervised Release which may include any number of years up to and including life is the appropriate disposition of this case.

4

11. Defendant is aware of his right to appeal his conviction and that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The Defendant knowingly and voluntarily waives the right (a) to directly appeal his conviction and the resulting sentence pursuant to Fed. R. App. P. 4(b) and 18 U.S.C. § 3742, and (b) to contest or collaterally attack his conviction and the resulting sentence pursuant to 28 U.S.C. § 2255 or otherwise, including challenges based upon ineffective assistance of counsel. Defendant understands and agrees that nothing in this Plea Agreement should be construed as a waiver by the United States of its right to appeal the sentence under 18 U.S.C. § 3742.

12. Defendant agrees to make a full and complete disclosure of his assets and financial condition and will submit to an investigation by the Financial Litigation Unit of the United States Attorney's Office for the purpose of insuring prompt satisfaction of all fines, restitution, and special assessments resulting from his guilty plea.

13. Nothing in this Agreement shall protect defendant in any way from prosecution for any offense committed after the date of this Agreement, including perjury, false declaration, or false statement, in violation of 18 U.S.C. §§ 1621, 1623, or 1001, or obstruction of justice, in violation of 18 U.S.C. §§ 1503, 1505, or 1510, should defendant commit any of those offenses during the cooperation phase of this Agreement. Should defendant be charged with any offense alleged to have occurred after the date of this Agreement, the information and documents disclosed to the United States during the course of the cooperation could be used against defendant in any such prosecution.

14. Defendant agrees not to pursue or initiate any civil claims or suits against the United States of America, its agencies or employees, whether or not presently known to defendant, arising out of the investigation or prosecution of the offenses covered by this

Agreement.

15. The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

16. Defendant agrees to interpose no objection to the United States transferring evidence or providing information concerning defendant and this offense, to other state and federal agencies or other organizations, including, but not limited to the Internal Revenue Service, other law enforcement agencies, and any licensing and regulatory bodies, or to the entry of an order under Fed. R. Crim. P. 6(e) authorizing transfer to the Examination Division of the Internal Revenue Service of defendant's documents, or documents of third persons, in possession of the Grand Jury, the United States Attorney, or the Criminal Investigation Division of the Internal Revenue Service.

17. If the Court refuses to accept this agreement and impose sentence in accordance with its terms or dismiss Count 1 according to the United States' motion pursuant to Fed. R. Crim. P. 11(c)(1) (A) and (C), this Agreement will become null and void and neither party shall be bound thereto, and defendant will be allowed to withdraw the plea of guilty and/or the United States may withdraw from the Agreement and elect to proceed to trial.

18. Defendant agrees that the disposition provided for within this Agreement is fair, taking into account all aggravating and mitigating factors. Defendant states that he has informed the United States Attorney's Office and the Probation Officer, either directly or through his

attorney, of all mitigating factors. Defendant will not oppose imposition of a sentence incorporating the disposition provided for within this Agreement, nor argue for any other sentence, including departures or variances. If Defendant argues for any sentence other than the one to which he has agreed, he is in breach of this Agreement. Defendant agrees that the remedy for this breach is that the United States is relieved of its obligations under this Agreement, but Defendant may not withdraw his guilty plea because of his breach.

19. This document states the complete and only Plea Agreement between the United States Attorney for the Western District of Kentucky and defendant in this case, and is binding only on the parties to this Agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified other than in writing that is signed by all parties or on the record in Court. No other promises or inducements have been or will be made to defendant in connection with this case, nor have any predictions or threats been made in connection with this plea.

AGREED:

DAVID L. HUBER
United States Attorney

By:

_____          7/10/07
JO E. Lawless                             Date
Assistant United States Attorney

I have read this Agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it.

_____      7-10-07
Joseph Turner                            Date
Defendant

I am the defendant's counsel. I have carefully reviewed every part of this Agreement with the defendant. To my knowledge my client's decision to enter into this Agreement is an informed and voluntary one.

_____      7/10/07
Patrick J. Renn                          Date
Counsel for Defendant

DLH:JEL:070625